We will now move to the next case, United States v. Thompson. Counsel will be appearing on Zoom, so we'll give a few minutes to get that set up. All right, it looks like we have all four of you on the screen. Can everyone hear us? Okay, we'll start with Mr. Upson, attorney for Appellant Churchwell. May it please the Court. The panel can hear me all right? May it please the Court. Counsel Keith Upson on behalf of Mr. Churchwell. I'd like to address our second issue to the extent the panel permits me. The conspiracy to commit racketeering count, count one, alleged four predicate acts against Mr. Churchwell, three of which were also substantively charged as well. In the order they were addressing count one, maintaining the premises, which was also substantively charged as count 20, possession with intent, which was count two, and the death of Mrs. Gardner, which was count nine. Of those three, when instructing the jury as to the substantive counts, the Court repeated the instructions the Court had given in count one as to both counts two, the possession with intent, and the murder of Mrs. Gardner, count nine. So Mr. Upson, regarding that, my first question is you agree that that objection that you're making now was not raised below, correct?  So we would review it for plain error. Do you know of any case which says that a district judge has to repeat the elements of an offense and cannot refer back to them, and failing to refer back is error? Not yet, Your Honor, but that's essentially, I've essentially briefed and argued for this Court based on apprendee to do that very thing. How would, under apprendee, would that matter if the jury did in fact have the elements and the only error is the failure to explicitly repeat over and over again those elements? Well, Your Honor, these cases candidly require mental diligence for everyone involved to cognitively track. I mean, these are not RICO cases in general, the racketeering case, much less conspiracy to commit RICO. These cases present procedural cognitive difficulties, not only for the juries, but for the Court, candidly, for the government, for counsel. It seems like the jury did that, though. Here, as I understand it, the jury was out for quite some time, asked some pretty intelligent questions, got some answers, and I know that's part of the issues that we're going to talk about, and ultimately rendered a verdict that was not complete. In other words, they made calls on different findings. So it seems like the jury did their job here with the instructions. Well, and Your Honor, and I believe this is consistent with how I briefed it as well. It's 403, docket entry 403, when the jury was charged, it was around page 38 that the Court referred them back to the prior instruction. But if the Court had gone in order of the verdict form, for example, it probably would have fallen closer to pages 59 to 60. And I see that I'm out of time, but if I may continue responding. You can finish your answer, yes. Thank you, Your Honor. When these are so complicated to track, how can we assume, and more specifically to your point, Judge Luck, it was count nine as to Mr. Churchwell that they did acquit him. I think that the fact that they hadn't been instructed on kind of calls into question. I mean, at that point, Your Honor, they did show consideration to a point, but at that point, they're tired and they're done and they're just checking boxes. Did the jury have the charge in writing out in the jury room? Sometimes they do, sometimes they don't. Do you know? I believe they did, Your Honor. But again, that was far, far earlier in the packet as it pertained to one of the predicate actions. I understand, but you can see the jury had this charge in writing in the jury room. I believe they did, Your Honor. Of course, if the record reflects otherwise, then I defer the record. Maybe the government can tell us. Thank you. Thank you. Mr. Lauterbach for Appellant Thompson. Good morning. May it please the Court, Frank Lauterbach on behalf of Andrew Thompson. We raised essentially two issues in our brief. I'd like to speak about issue number two first, that being the denial of Thompson's motion for judgment of acquittal as to count one. The government in its brief takes the position that Thompson and the other defendants did not raise this issue sufficiently in the district court and that this should be reviewed for plain error. I'd like to correct that. Document 413 that was filed by Mr. Thompson after the trial was a motion for judgment of acquittal and renewal of Rule 29 motions on all counts that raised this very issue. It was denied by an order which is Document 461. It is our position that the standard of review as to this issue as it relates to Mr. Thompson should be a review de novo as opposed to plain error since it was in fact raised and argued before the district court. Counsel, I question whether a post-trial sufficiency argument that wasn't raised contemporaneously pro se by a represented party could preserve anything, but let's assume for the moment that you're right that it did. I have to confess that I'm confused by the argument as I understand it. The argument as I understand it is that somehow that the predicates were not crimes of violence. Is that the argument that you're making? Some of them were not and it was difficult for the jury to determine or it's hard to determine from their verdict which ones they may have relied upon in finding the necessary to well didn't the jury didn't the jury specifically in both the substantive counts and as predicates find that Mr. Thompson committed two murders in aid of racketeering. And your Honor, it's the innate of racketeering. That is a problem as to the ones that were drug counts in the United States versus green. This court had indicated that a murder based on a Rico conspiracy does not qualify as a crime of violence under 924 c3. But your client wasn't charged with with with conspiring to murder those people. Your client actually did murder them, right? Well, he's charging count one with the Rico conspiracy. But we're talking about the predicates. Yes, the conspiracy can't be a crime of violence itself, but he's not charged with having committed a crime of violence. He's charged with actually committing the conspiracy. And the question is whether those predicates are qualifying offenses. And as I understand it, murder in aid of a racketeering conspiracy is a qualifying offense. And the jury in fact found that your client committed murder. Is any of that wrong? Well, I'm assuming that's the government's position. We believe that the the charge murders in aid of racketeering are going back to the conspiracy charge. It would be vacated under green. Thank you. Thank you. I'm sure that at any rate, I want to make sure that we have sufficiently covered the standard of review because it was, in fact, the same issue that was raised in the post trial motion for judgment of acquittal. So it was, in fact, raised before the district court. Thank you. Mr. Irvin, counsel for Mr. Rodriguez, it's your turn. Good morning, Your Honor. Grady Irvin on behalf of Mr. Rodriguez, three quick issues I will address are whether or not there was a criminal enterprise. Number two is the instruction that the judge gave with respect to whether or not a person could be found guilty of murder or without being found guilty of being involved in a racketeering enterprise. And number three, the judge's failure to give the instruction with respect to self-defense. Every trap houses all over this country. People go into trap houses. They sell drugs all the time. There are four or five, six people, multiple people that sell drugs out of that house. Is the fact that that somebody in that house shoot someone and murder someone makes them part of a racketeering enterprise? Let's say that's one predicate act supposedly. And then there's the aspect of them selling the drugs. That could be another predicate act. Supposedly, does it turn us or every trap house into a racketeering conspiracy? Counsel, though, there seemed to be some evidence connecting it together. And let me just tell you what I think are a couple of them. And then I want you to respond. So as I understand it, Mr. Citron testified that these folks were, in fact, a gang, that the gang had elements and rituals of gang activity. They had a name. They had a song. They had a sign that they identified with. They had a color. They had a rival group that they were with. That was some testimony which we've said is evidence of enterprise. And then you had the testimony from I think it's Ms. Brewer who said that J.R., sort of the head of the enterprise, put your client in charge of the trap house. And then Mr. Thompson worked for your client. I know Mr. Thompson rejects that, but that was some evidence there. That seems to be evidence of structure and aid of the very things that we're talking about. And then, of course, you have a common enterprise, drug dealing and murdering and advancing that. So that seems to be evidence of enterprise. Where am I having that wrong? Your Honor, I believe that these people were acting on their own. I think you do have testimony. I guess that a jury came back and said that there was some particular enterprise. But we continue to dispute that, Your Honor. People were dealing on their own, selling drugs on their own. People, we've had a jury that determined that Mr. Upson's client, Mr. Churchwell, had not murdered someone right there in the trap house, shot her three times, supposedly, right there at the trap house. But he was not guilty of murder and aid of racketeering. How can that be? So I say that when this court reviews these factual findings, that we have a broad interpretation of what enterprise is supposed to be. And we would like this court to address that because this broad interpretation of enterprise seems to be opening the floodgates that every trap house thus becomes the fertilizer for racketeering filings by the United States. The other aspect of it is I like to address the instruction that the judge gave when the jury came back or whether or not you could be found guilty of murder and not be found guilty of racketeering. And we make the argument, join the government in that position, that yes, you could be. Apparently, a jury came back and said there was no murder and aid of racketeering. And I know counsel, I know we're running out of time, but didn't you didn't you withdraw ultimately that request and and concede that the government's instruction? I'm sorry that the court's instruction was correct. And your Honor, Naughty Grady, Naughty Grady, I should have stood my ground. But when I had a judge make statements to me and I know there's case law to say we can we can tell you don't do that in the future. But does it change the posture of the case as it came out? I back down, Your Honor, and I should not have done that. I should have stayed stood my ground. No pun intended. And I should have I should have continued to do that. But, yes, I did withdraw. And that's why we're asking the court to to review that particular determination. What happened to me and what happened with the court. Thank you. Thank you. Ms. McNamara for the United States. Morning, and may it please the court. I just want to thank the court for accommodating us by Zoom. I know this is not ideal. Many of his arguments in the center on a supposed lack of evidence of racketeering enterprise or any conspiratorial. Counsel, can I fast forward you a little bit to something that I'm concerned about? And I think is, at least for me, one of the closest calls or issues in the case. And that is the sufficiency of the evidence with regard to count 19, which is the count that charges Mr. Rodriguez as an accessory to Mr. Thompson's murders of Joseph and Stevenson. I think I hope I get those names right. So that's what I want to focus on. My first question is a general one of curiosities. What is the requirement of proof for intent? Does the government have to show that the intent was to commit any offense against the United States? Or is there a requirement that the government has to show that there was the defendant was an accessory to committing a specific crime against the United States? As I understand it, the indictment charge specific crime. So I think the latter. But I just want you to weigh in on that question first and then I have a follow up after that. Yes. So I think the statute would just require the accessory to know that the principal has committed an offense. But I think the way it was charged in the way that the jury returned its verdict, that it was specific to this murder. So I do agree with you on that premise that that was a burden to show that here. Okay. So the murder or an advocate hearing is, as I understand it, Mr. Thompson. The theory is Mr. Thompson murdered those two individuals for the purpose of furthering the drug enterprise. One of the defendants or one of the victims was supposed to be a drug dealer. He ripped off. And then I think his girlfriend sort of came in at the time and also was murdered. That's that's sort of the operating theory of what happened, right? Yes. Okay. How what evidence is there that Mr. Rodriguez not just knew that there was a murder, because I think there probably is pretty good evidence that there that he knew there was a murder, but that there was evidence that that murder was done in aid of of furthering the drug enterprise. That's the part that I'm I'm having a little trouble with. Tell me the specific evidence in the record that supports that. Okay, well, you have to start with the general premise that Rodriguez is running a an enterprise and a drug conspiracy, of which he knows that Thompson is a part. Thompson is one of his best friends. He hangs out at the 11th Street house and sells drugs from there. And and what has been what was alleged and what was. As I understand, though, it's sorry to interrupt counsel, but with regard to Mr. Thompson, all those facts are indeed in the record. But also within that is that Mr. Thompson also was dealing in other places at other times. In other words, this was all sort of loosely affiliated. And Mr. Thompson worked with the enterprise. I think there's certainly evidence of that. But he also sold drugs elsewhere to correct. Yes, but Thompson Thompson calls Rodriguez after after this is over. So so the evidence that this was in aid of this enterprise is that Thompson calls me basically head of this enterprise to help him out when this is over. He calls him. We have we have phone records showing that he calls him shortly after this happened. And Tom and Rodriguez drives him home, brings him home, bearing the fruits of this robbery, the drugs. Well, as I understand it was in like a what I used to call a dog kit, like a little a little like bathroom bag that you would bring with you. Right. Sure. Yes. Yes, that's true. That's true. So there's no indication that he saw the contents of the bag. Right. There is no direct evidence of that. No, that's that's right. Could the jury infer that he did? Sure. He calls. He calls Rodriguez basically to bring home. He's wearing clothes which are likely bloody. This was murder in close contact. And as soon as Thompson gets home, he takes off clothes and burns them on the barbecue. So again, there's no doubt that if we were if the charge was just murder, that that evidence would be sufficient to know that he was an accessory after the fact to murder. I don't think there's any question of that. It's the it's the in aid of part that I'm having trouble with. So as I understand it, the best evidence is the phone calls and the fact that the bag was in the car with Mr. Thompson as Mr. Rodriguez picked him up and brought him back. Right. That's the best evidence of drug. Of it being in aid of a drug ripoff. Well, that is the evidence that this was a drug ripoff and that and the aid of racketeering part, I think you've got to go to you've got to look at it more broadly in understanding the relationship between people and that he was a member of this organization and was a drug tax in this organization. And the one or two of the purposes of work were theft and drug trafficking, that it was reasonable for the jury to find that because he calls Rodriguez to help him out. And all that before him, that this was all in furtherance of that enterprise of which he was a member. Now, in that regard, let me ask you about Joseph. Are there any evidence that Joseph was ever at the trap house? Do we do we ever have Joseph selling out of the trap house or even going to the trap house? No, I don't believe that. So it seems like the focus, at least in the briefing, was that this was separate activity by Thompson. OK, well, why would that not be true that this was not related to the enterprise, i.e., and therefore it was not in aid of the racketeering, the trap house. Tell me any other thing we know about Joseph other than he was murdered that day. And it wasn't at the trap house like the other murder. It was. Where was it? Where was the murder? The Joseph murder. It was some other location. Yes, it was. So Thompson had called in that there were phone records and phone calls that morning between Thompson and Joseph to set up this sale. And they met each other at a restaurant parking lot first. And then they drove to this house where the murder. So is the government's theory you just can't isolate that one sale? Is that what you're saying, that one drug ripoff from the rest of everything else they were doing? That's exactly right, Judge Hall. I mean, could the jury have said, I don't see that this was part of the enterprise? Sure. That's one interpretation of the evidence. Is another that this was in furtherance of this drug trafficking enterprise that Rodriguez is the head of, that Rodriguez has called to bail him out to help him again? Sure. Absolutely. And that's what the jury. Was there any evidence of other drug ripoffs as part of this enterprise? There was not evidence of drug ripoffs that I recall specifically. There was certainly evidence of theft. Right. In other words, there are some gangs. I'm wrong about that. The first two people who were murdered, now that they were acquitted, this was Thompson murdered the Robinson and Florence Randall on the New Year's Eve night. Now, he was acquitted of the murder, but there was evidence that the purpose of those murders was to steal the drugs, that he was stealing the drugs and the people fought back and that's what precipitated the murder. So, yes, there was evidence and of Thompson doing this as well. Yes. So, from my perspective, I think when you view this as part of an ongoing chain of events in furtherance of this enterprise, that, yes, this was a drug ripoff for contraption. Just like this Robinson and Randall in furtherance of this enterprise. Now, from this question and from Judge Luck's question four, Judge Luck addressed actually quite a bit of the elements that I had originally intended to discuss with respect to the enterprise. And I won't go through all that unless you have questions about that. That's all I did want to confirm. Yes, the jury instructions did go with the written instructions. And I will confess that I worked on those instructions and part of that, the reason we did it that way was to make it simpler for the jury, not more complicated. It seemed easier to me to understand the instructions if they were including elements time and time again. And I think what other instructions what the jury hearing was perfectly appropriate and understandable by the jury, of course, not playing an error. And I don't have anything else to add unless the court has additional questions for me. Thank you. Two minutes. We've now got two minutes of rebuttal from Mr. Upson. Thank you. I, unless the court has further questions, I have nothing to add that wouldn't be repeating myself. I'm happy to return that a minute and 49 seconds back to back to your Friday morning. Thank you. We do appreciate that. Mr. Ladderback, you've also reserved two minutes. Your Honor, likewise, I have no rebuttal unless there are some questions from the court. And any additional time I have, I would be happy to pass to Mr. Urban with the court's permission. All right, Mr. Urban. Your Honor, I did. I failed to initially address, and I don't think it's fair to the government, the part about the self-defense. So I'll have to rely on my brief with respect to that. I did not argue that. And so I didn't give the government a chance to address it. We do have your brief. Yes. Your Honor, we would rely on our argument at this time unless the court has questions. Thank you. I appreciate the argument from all of the counsel. I know the three defendant's attorneys are all CJA appointments. We appreciate your service. And of course, we appreciate the service of Ms. McNamara to the people as well. So thank you all for the service to the court. We'll move on to our next case.